UTICA,
August, 1823.

REYNOLDS
v.
MANNING.

## REYNOLDS *against* MANNING.

The defendant having been arrested, and given bail to the sheriff for a debt from which his person had been discharged, under the statute, &c. moved to be discharged on common bail, which was refused, because a *prima fucie* case of fraud was made out against him by affidavit.

IN assumpsit, the defendant had been arrested without any previous order, and had given bail to the Sheriff; and the motion was to discharge him on common bail, because he had obtained his discharge from the debt claimed in this action, under the " act to abolish imprisonment for debt in

keep the jury, without permitting them to separate, or any one to converse with them, for no man knows what may happen ; for, though the law requires honest men should be returned upon juries, and without a known objection, they are presumed to be *probi et legales homines ;* yet they are weak men, and, perhaps, may be wrought upon by undue applications." And 1 *Inst.* 227, b ; 2 *Hale, P. C.* 296-7 ; *Palm.* 380 ; *Metcalfe* v. *Deane,* (*Cro. Eliz.* 189 ;) *Roll. tit. Trial,* 714, *pl.* 1, 6, 8, 25 ; *Com. Dig. Pleader,* (*S*) 45 ; *Roll tit. Trial,* 716, *pl.* 20 ; *Pratt's case,* (*id. pl.* 19 ;) *Hunt* v. *Locke,* (1 *Keb.* 300 ;) 11 *H. 4.* 17 ; were also cited. None of these authorities, except the first, respect the separation of the jury, with or without leave of the Court; but merely the great strictness of their behaviour while together, as to eating and drinking, having fire or candle, conversing; or hearing conversation, or hearing evidence while going from the bar, or at their room, or taking evidence with them, and how closely they are to be watched and kept by a sworn bailiff. Mr. *Denman* also mentioned Dr. *Watson's* case, (2 *Starkie,* 116,) who was tried, in 1817, for high treason, as an accomplice with the famous *Arthur Thistlewood.* In that case, which lasted several days, the jury were kept together, under the charge of a bailiff. So, in the protracted trials in 1794, of *Horne Tooke,* &c. steps were taken to prevent the possibility of any communication with the jury during adjournment. And vid. 6 *T. R.* 530, *n.* (*a*) *Bac. abr. verdict, and Rex* v. *Stone* (6 *T. R.* 530-1.)

But the Court were unanimous in refusing the rule. *Abbott, C. J.* who tried the cause, said, (*inter alia*) " The trial began between 9 and 10 in the morning ; it had proceeded until 11 o'clock at night, or later, before the evidence on the part of the prosecution closed. Learned counsel were employed separately for several defendants. It must be assumed, (and nobody could assume to himself the contrary,) that in that stage of the case, evidence would be laid before the jury on the part of the defendants. It became matter, therefore, of necessity, that the trial should be adjourned, and an adjournment accordingly took place from the necessity of the case, the jury being fatigued both in mind and body ; and it would have been injurious to the case of the defendants, even if the Judge and jury had had strength enough to go on till the trial came to a close ; I say, most injurious

certain cases," passed April 7, 1819. (*Vid. sess.* 42, *ch.* 101.) And this was opposed by an affidavit, shewing certain facts, ·wh·ch amounted, *prima facie*, to evidence of fraud in obtaining the discharge ; and

*Per Curiam.*　For that reason we deny the motion.(*a*)

Motion denied.

(*a*) And so note the difference, between a discharge under *this*, and the *two-third act*. The latter is considered conclusive, as will be seen in *Reed* v. *Gordon* & *Wallock*, (ante 50.) The *English rule, as mentioned* (ante 50, *n*. (*a*) seems, by this decision, to apply in case of a discharge under the *act to abolish imprisonment for debt*.

to the case of the defendants, if their case was heard by persons whose minds were exhausted with fatigue, as it would have been if an adjournment had not taken place. An adjournment of this nature is not necessarily followed by the dispersion of the jury, for, in many cases, (and in many cases they ought) they are kept together till the close of the trial. But I am of opinion, that in case of a misdemeanor, their dispersion does not vitiate the verdict; and I found my opinion upon the admitted fact, that there are many instances, of late years, in which juries, upon trials for misdemeanors, have dispersed, and gone to their abodes during the night for which the adjournment took place ; and I consider every instance in which that has been done, to be proof that it may be done." [He went on to shew that the consent of the defendant could make no difference, and ought not to be asked. And vid. 6 *T. Rep* 530, *n*. (*a*) where it was held, that, in *Tooke's* trial for high treason, the Court might adjourn from day to day, during the trial, without the prisoner's consent, and that this ought to be done.] He said farther, " The only difference that can exist between the fact of the jury separating with or without the approbation of the Judge, as it seems to me, is this ; that if it be done without the consent or approbation of the Judge, express or implied, it may be a misdemeanor in them, and they may be liable to be punished; whereas, if he gives his consent, there will be no such consequence of a separation. But though it may be a misdemeanor in them to separate, without his consent, it will not avoid the verdict in a case of this kind, as it would if the law required the jury to be absolutely kept together. Now it is not surmised, in this case, that, during the night, (for it was during night only that the separation took place) any attempt was made to practise upon the jury. If any thing of that could have been shewn, the Court would require that matter to be investigated. But it is not even suggested, that any such thing took place. All that is suggested is, that, in point of fact, the jury were allowed to go to their own homes, in order to take their necessary refreshments, which,